**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------- X

CCR INTERNATIONAL, INC.

                        Plaintiffs,

                      v.                                          No. 15 Cv. 6563
                                                                Declaratory Judgment
THE ELIAS GROUP, LLC ,                          Illegal Appropriation of
COCO RICO, LLC                                            Trademark
                                                                  Breach of Contract
                                                                  Injunction

                    Defendants.

--------------------------------------------------------------------- X

## COMPLAINT

## INTRODUCTION

    Defendant has obligated plaintiff to file this Complaint rather than complying with the Lanham Act and defendant's straightforward contractual obligations. The Elias Group anticipated this situation with a Guaranty Agreement that instead of being self-executing, requires CCR International, Inc. to occupy this Honorable Court's time with defendant's breach.

    CCR International, Inc. is a successor corporation to Coco Rico, Inc , a Puerto Rico corporation, established in 1949 to manufacture a natural coconut base

1

concentrate used in the manufacturing of the internationally known carbonated soft drink Coco Rico. After its success, Coco Rico's business, under CCR International, Inc. suffered serious reverses with the recession in Puerto Rico, which began in 2006.

In March 2008, CCR Development Group, Inc. agreed to buy the Coco Rico Assets pursuant to an Asset Purchase Agreement from CCR International, Inc. for Twelve Million Eight Hundred Thousand Dollars ($12,800,000). Of that amount, CCR Development eventually paid only a small percentage and then defaulted on its payments, although CCR Development continued to produce and sell Coco Rico. Desperate because of CCR Development Group's breach of contract, the principals of CCR International approached a long term business distributor of Coco Rico Richard Hahn, principal of GoodO Beverage an affiliate company of the Honickman Group. GoodO Beverage has been manufacturing and distributing Coco Rico for more than 30 years.

Believing in the good faith and trusting due to long time business and personal relationships with the principals of the Honickman group, especially Richard Hahn and Harold Honickman, the principals of CCR International engaged in extended negotiations with Richard Hahn of defendant Elias Group for a period approximately (5) five years looking to stabilize CCR International and maintain its cash flow. CCR International agreed to assign the Nine Million Dollar

($9,000,000 USD) debt from CCR Development Group, Inc. to the Elias Group at a discount, under an Assignment Agreement. CCR International gave Elias Group a four million dollar ($4,000,000 USD) benefit to facilitate Elias Group's purchase of the Coco Rico assets, which are currently valued at Fourteen Million Four Hundred Thousand ($14,400,000 USD).

Elias Group finally agreed to Purchase the Coco Assets pursuant to an Asset Purchase Agreement, in which it discounted Eight Million Five Hundred Thousand Dollars ($8,500,000 USD) from the value of the Coco Rico Assets of $14,400,00 Million, CCR Development Group's obligations and the Assignment note value given by CCR International to Elias Group. Under the Assignment Agreement, Elias Group agreed to pay CCR International $37,500 monthly for a total of $450,000 a year until the Elias Group was able to paid plaintiff $4,700,000 in a lump sum. Instead, the defendant liquidated the CCR Development Group's obligations and discounted the Assignment Agreement value and made payments of $6,041,000, for the benefit of CCR Development Group, Inc., not CCR International, Inc.

At the closing, CCR International transferred all of its intellectual property worldwide to Coco Rico, LLC, a Puerto Rico limited liability corporation that the principals of Elias Group had created to take advantage of tax exemptions in Puerto Rico. CCR International did so because the Elias group informed CRR's

3

principal that the Elias Group had opted to pay the monthly payments for a period of time before making the complete buyout with the $5,000,000 payment the Assignment Agreement provided. Instead, on June 9, 2015, Elias Group announced that it would pay none of its obligation to CCR International. Once the Elias Group made that announcement, CCR International asked for the closing documents, which the Elias Group did not produce until recently.

Since April, defendants have been using plaintiff's trademarks valued at Fourteen Million Four Hundred Thousand Dollars ($14, 400,000 USD) worldwide without having paid for them. Because of defendants' actions in bad faith, plaintiff seeks to be compensated in the amount of $8,359,000 million dollars [the remainder of the $14.4 million was paid or discounted] and for a preliminary injunction ordering defendants to cease and desist from using the Coco Rico trademarks and formula that belong to CCR International, Inc.

## JURISDICTION AND VENUE

1. The Court has jurisdiction of this case under the Trademark Act of 1946, 15 U.S.C. §§ 1501 *et seq.,* as amended by the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act") and for unlawful and deceptive acts and practices under the laws of the State of New

York.

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1338 (a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims for unlawful and deceptive acts and practices and breach of contract under the laws of the State of New York.

3. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because defendants do business there and a substantial part of the transactions at issue occurred there. Moreover, the different agreements among the parties specify that New York law shall apply and that the parties agree to submit to the jurisdiction of this Honorable Court.

## THE PARTIES

**Plaintiff**

4. Plaintiff, CCR INTERNATIONAL, INC. is a corporation organized under laws of the Commonwealth of Puerto Rico.

5. Defendant, Elias Group, LLC, is a limited liability corporation, on information and belief organized under the laws of the State of Delaware, which breached its agreements with CCR International so that it could appropriate the

Coco Rico assets, as defined herein, for its benefit and for the benefit of its affiliated corporation, Coco Rico, LLC, without paying plaintiffs the consideration it had agreed to pay.

6. Coco Rico, LLC is a Puerto Rico limited liability corporation which the Elias Group set up in Puerto Rico to take advantage of Puerto Rico's tax exemptions. Coco Rico, LLC received CCR International's intellectual property, including the trademarks without paying any consideration.

## FACTUAL ALLEGATIONS

**Coco Rico's Early Years**

7. Coco Rico was founded as a soft drink company catering to the tastes of its customers in Puerto Rico and throughout the Caribbean in 1949. Since its origin, Coco Rico grew steadily, expanding worldwide, with particular success in Hispanic and Asian markets in the US.

8. CCR International, Inc. is the owner or holder of certain registered trademarks and service marks, in each case related to the development, manufacture, and sale of proprietary soft drinks that are registered in the United States, Puerto Rico, the U.S. Virgin Islands, the British Virgin Islands, Trinidad and Tobago, Aruba, Dominican Republic, Curacao, Bonaire, St. Martin, the

6

Netherlands, and Hong Kong. Coco Rico International's trademarks include, but are not limited to, Coco Rico.

9. CCR International, Inc. is a family owned company. Jose and Roberto Fuertes took over the operations from their father, while their grandfather had founded the company.

10. Coco Rico, Inc. and CCR International's principals worked in the company their entire lives and met Richard Hahn and Harold Honickman when they began to take positions of authority in the business.

11. In addition to the distribution of Pepsi in the Northeast, the Elias Group, Mr. Honickman owns Canada Dry, as well as a number of commercial juice and tea companies.

12. Over the years, the Fuertes met with Honickman and Richard Hahn over business matters and developed professional and personal relationships with them. Jose Fuertes has visited Honickman and Hahn in their respective residences in Philadelphia and California.

13. As Puerto Rico entered into a recession in 2006, Coco Rico began searching for a white knight because it was saddled with high operating costs and a shrinking base in its original market of Puerto Rico.

**The March 2008 Sale to CCR Development**

14. On March 31, 2008, CCR International entered into an Asset Purchase

Agreement, wherein CCR International sold the formula to its soft drink, its trademarks, and its manufacturing facilities to CCR Development Group, Inc. for Twelve Million Eight Hundred Thousand Dollars ($12,800,000 USD). CCR Development was to place one million five hundred thousand dollars ($1,500,000) in escrow and make monthly payments of $50,000.

15. Over time, two significant developments occurred.

16. First, CCR Development Group failed to pay the $1,500,000 into an escrow account and started defaulting on its monthly payments.

17. Second, things coconut became enormously popular, and Coco Rico's sales increased substantially.

18. Given CCR's repeated breaches and its own improved prospects, CCR International, Inc. began looking for other purchasers.

19. Coca Cola of Puerto Rico was interested in buying the Coco Rico Assets, as was the Honickman affiliate, defendant Elias Group.

20. Plaintiff chose the Elias Group because of CCR International's principals' positive relationship with Harold Honickman, dating back decades.

**The 2013 Assignment Agreement to the Elias Group**

21. In January 2013, CCR International agreed to assign its rights under the 2008 Agreement to the Elias Group, LLC, a company created by an affiliate of the Honickman Group for this transaction in exchange for an initial payment of

8

Three Hundred Thousand dollars ($300,000 USD) and the Elias Group's conditional agreement to purchase the Coco Rico assets after conducting due diligence to determine whether to execute an Asset Purchase Agreement for those assets.

22. During the due diligence, the Elias Group agreed to pay CCR International $50,000 a month the Elias Group received from CCR Development from Coco Rico's sales up to a yearly maximum of $400,000.

23. Once the Elias Group completed its due diligence to its satisfaction, it agreed to purchase the Coco Rico trademark and formula from CCR International for thirty seven thousand five hundred dollars ($37,500) monthly up to four hundred and fifty thousand dollars ($450,000) a year and a buyout amount <u>paid to CCR International</u> of five million dollars ($5,000,000) less the initial payment of three hundred thousand ($300,000).

24. Because Hahn and Honickman were personally involved in the negotiations over this transaction, the Fuertes trusted that defendants would comply with their agreement.

25. The conditional payments were contingent upon the Elias Group acquiring the rights, title, and interests in all of the Coco Rico assets.

26. The value of Coco Rico, as determined by the Elias Group in January 2013, was fourteen million dollars $14,000,000 (the nine million dollars

($9,000,000) that CCR Development owed to CCR International and CCR International assigned to the Elias Group plus the five million dollars ($5,000,000) the Elias Group agreed to pay to CCR International) plus the annual payments to which the Elias Group also committed to make.

27.     The parties subsequently entered into a Guaranty Agreement in which the parties agreed that the amount CCR Development owed CCR International at the time CCR International assigned its rights under the 2008 agreement to the Elias Group was eight million five hundred thousand dollars ($8.5 million), thus reducing the purchase price from $14.4 million to $13.9 million.

**The 2015 Acquisition**

28.     On May 22, 2015, the Elias Group cancelled CCR Development Group's debt and paid six million forty one thousand dollars ($6,041,000) to CCR Development and third parties, none of which was paid to CCR International, Inc.

29.     For example, defendants paid Raul Camara $325,000. This amount did not benefit plaintiff.

30.     Defendants also paid $866,000 to or as directed by Buyer's Affiliate Good-O Beverage Company. This amount did not benefit plaintiff.

31.     Defendants paid $3,259,000 to Banco Cooperativo de Puerto (Bancoop). This amount did not benefit plaintiff.

32.     Defendants made a promissory note in the amount of $1,000,000 to

Bancoop as well. This amount did not benefit plaintiff.

33. Without any consideration being paid from Coco Rico, LLC, in violation of the Assignment Agreement, to plaintiff as part of the Acquisition, Coco Rico, LLC purported to acquire the Coco Rico assets, CCR International's intellectual property, including the trademarks and their corresponding goodwill of over eighty years in the marketplace.

34. Given that the Elias Group had to make both monthly payments and a buyout amount, the principals of CCR International expected that the first payment in exchange for the assignment agreement would be paid 30 days after the closing.

35. Instead, after 30 days, defendants paid nothing.

36. While Jose Fuertes demonstrated his consent to the transfer of the Coco Rico intellectual property assets to Coco Rico LLC, such consent was obtained by the Elias Group's fraudulent averments that it intended to abide by the 2013 Assignment Agreement, under which CCR International would receive monthly payments of $50,000 up to $400,000 and a buy out amount of four million seven hundred thousand dollars ($4.7 million) at the time the Elias Group acquired the Coco Rico assets.

## CLAIMS FOR RELIEF

The allegations of the preceding paragraphs are re-alleged in each of the subsequent claims:

## CLAIMS FOR RELIEF

## FIRST CLAIM

## FEDERAL TRADEMARK INFRINGEMENT

## (15 U.S.C. 1114)

37. Plaintiff hereby realleges and incorporates by reference the preceding allegations of the Complaint as if fully set forth herein.

38. Without plaintiff's valid authorization or consent, and having knowledge of both plaintiff's well-known and prior rights in Plaintiff's COCO RICO Marks and that defendants' products bear marks which are intentionally identical to the COCO RICO marks. Defendants have manufactured, distributed, offered for sale and sold the infringing products to the consuming public in or affecting interstate commerce, intentionally taking advantage of the goodwill of plaintiff's mark for defendants' profit.

39. Defendants' use of the COCO RICO mark is causing deception among the consuming public as to the origin of the products, and is likely to deceive the public into believing the products are authorized by COCO RICO, all to the damage and detriment of CCR International's reputation, goodwill, and sales.

40. Plaintiff has no adequate remedy at law, and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## CLAIM TWO

## UNFAIR COMPETITION

## 15 U.S.C. 1125 (a)

41.     Plaintiff hereby realleges and incorporates by reference the preceding allegations of the Complaint as if fully set forth herein.

42.     By misappropriating and using the PlaintIff's COCO RICO mark and trade name, Defendants misrepresent the mark and falsely describe it to the general public.

43.     Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale and/or sale of the Products creates express and implied misrepresentations that the Products were created, authorized, or approved by Plaintiff, all to Defendants' profit and Plaintiff's great damage and injury.

44.     Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), in that Defendants' use of the Plaintiff's COCO RICO mark in connection with their goods and services, in interstate commerce constitutes a false designation of origin.

45.     Plaintiff has no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its good will and reputation

## CLAIM THREE

## COMMON LAW TRADEMARK AND TRADE NAME

## INFRINGEMENT

46.  Plaintiff hereby realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

47.  Plaintiff has built up valuable goodwill in Plaintiff's COCO RICO Mark and trade name.

48.  With full knowledge of the fame of Plaintiff's COCO RICO Mark and trade name, Defendants have traded and continue to trade, on the goodwill associated with Plaintiff's COCO RICO Mark and trade name and mislead the public into assuming a connection between the Product and Plaintiff.

49.  Defendants' acts of trademark and/or trade name infringement cause confusion, mislead and deceive the public and falsely suggest a connection between the Defendants and Plaintiff, and Defendants will continue to do so in violation of the common law of the State of New York and to the detriment of Plaintiff and the unjust enrichment of Defendants.

50.  Defendants' acts of trademark and/or trade name infringement have caused and will continue to cause Plaintiff irreparable harm unless restrained by this Court. Plaintiff has no adequate remedy at law.

## CLAIM FOUR

## (BREACH OF CONTRACT DIVERSITY)

51. Plaintiff hereby realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

52. Defendants agreed to pay plaintiff $450,000 annually in consideration of the Coco Rico Assets and a Buyout Amount of $5,000,000 less the $300,000 down payment.

53. Instead of paying the $4,700,000 to plaintiff, defendants made payments to third parties.

54. The payments defendants made to third parties unrelated to plaintiff did not benefit plaintiff.

55. By such conduct, Defendants have knowingly taken possession and control of property and money away from its lawfully agreed beneficiaries, plaintiff herein, without plaintiff's consent.

56. By such conduct, the Defendants are liable to Plaintiff in the amount of 4,700,000, plus the $50,000 monthly until the buyout occurs as agreed.

## CLAIM FIVE

## FRAUD IN THE INDUCEMENT TRANSFER OF WORLDWIDE TRADEMARKS

57. Plaintiff hereby realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

58. Based on defendants' assertions that they would comply with the

Assignment Agreement, plaintiff herein assigned all of Coco Rico's trademarks worldwide to defendants.

59.  Plaintiff transferred its trademarks in the United States, Hong Kong, and throughout Latin America based on defendants' false assertions that defendants would comply with the Assignment Agreement.

60.  Based on Defendants' fraudulent acts, Plaintiff is entitled to be compensated in the amount of $4,700,000 plus $50,000 monthly, or, in the alternative, $8,359,000, the value of the trademarks transferred as a result of defendants' fraudulent conduct.

## CLAIM SIX

## QUANTUM MERUIT

61.  Plaintiff hereby reallege and incorporate by reference the preceding allegations of this Complaint as if fully set forth herein.

62.  Plaintiff is entitled to receive the full benefit of the bargain, that is, the $37,500 monthly and the 4,700,000 Defendants agreed to pay.

## CLAIM SEVEN

## UNJUST ENRICHMENT

63.  Plaintiff hereby reallege and incorporate by reference the preceding allegations of this Complaint as if fully set forth herein.

64.  Defendants have been unjustly enriched in the amount of four million

seven hundred thousand dollars ($4,700,000) plus thirty seven thousand five hundred dollars ($37,500) monthly, and plaintiff has been impoverished in an equal amount.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff requests that judgment be entered as follows:

A. On the <u>First, Second and Third Claims,</u> enter an order that the cease and desist from using Plaintiff's Trademarks, for costs, including attorneys' fees.

B. On the <u>Fourth Claim,</u> enter an order requiring defendants to pay plaintiff four million seven hundred thousand dollars ($4,700,000) plus the monthly payments of thirty seven thousand five hundred ($37,500) until the buyout amount.

C. On the <u>Fifth Claim</u>, enter an order requiring defendants to pay plaintiff four million seven hundred thousand dollars ($4,700,000) plus the thirty seven thousand five hundred ($37,500) or in the alternative, eight million three hundred fifty nine thousand dollars ($8,359,000.00) for the Coco Rico assets, which consist primarily of the value of Coco Rico's intellectual property and the formula.

D. On the <u>Sixth Claim</u>, enter an order requiring defendants to pay plaintiff four

million seven hundred thousand dollars ($4,700,000) plus thirty seven thousand five hundred dollars monthly ($37,500) monthly for the Coco Rico assets, which consist primarily of the value of Coco Rico's intellectual property.

E. On the <u>Seventh Claim</u>, enter an order requiring defendants to pay plaintiff four million seven hundred thousand dollars ($4,700,000) plus thirty seven thousand five hundred ($37,500) monthly for unjust enrichment.

F. Enter an order under plus judgment for costs, including attorneys' fees, due to defendants' temerity.

^. Grant such order or further relief as to this Court may seem just and proper for the redress of the CCR International, Inc., Jose Fuertes and Roberto Fuertes.

San Juan, Puerto Rico
August 19, 2015

                                      **LAW OFFICES OF**
                                      **JANE BECKER**
P.O. Box 9023914
San Juan, Puerto Rico 00902-3914
Tel. 787 754-9191
Fax 787 764-3101

 /s/ JANE BECKER
**JANE BECKER (JB6155)**