UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

CCR INTERNATIONAL, INC.,

        Plaintiff,

       15 Civ. 6563 (RWS)

  - against -

            OPINION

ELIAS GROUP, LLC, and COCO RICO, LLC,

        Defendants.

------------------------------------------X

A P P E A R A N C E S:


      Attorneys for Plaintiff

      LAW OFFICES OF JANE BECKER WHITAKER
      P.O. Box 9023914
      San Juan, PR 00902
      By: Jane Becker, Esq.

      Attorneys for Defendants

      SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY
      4300 Haddonfield Road, Suite 311
      Pennsauken, MA 08109
      By:  Alan C. Milstein, Esq.
          Jeffrey P. Resnick, Esq.

**Sweet, D.J.**

Defendants Elias Group, LLC ("Elias") and Coco Rico, LLC ("CCR LLC") (collectively "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice claims asserted in Plaintiff CCR International's Complaint alleging trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in violation of 15 U.S.C. § 1125(a), common law trademark and tradename infringement, quantum meruit, and unjust enrichment. As set forth below, Defendants' motion is granted.

## I.  Prior Proceedings

On August 25, 2015,[1] Plaintiff filed a complaint in this Court against Defendants alleging (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) common law trademark and tradename infringement; (4) breach of contract; (5) fraud in the inducement; (6) quantum meruit; and (7) unjust enrichment.

---

[1] Plaintiff formally filed a Complaint by ECF with error on August 19, 2015. ECF No. 1. The attached document was not a complete complaint, and was rejected by the Clerk as deficient. The Complaint was sufficiently refiled on August 25, 2015. ECF No. 4.

2

Compl. at 12-17. On October 13, 2015,[2] Defendant filed a motion to dismiss the trademark infringement claims (Claims 1 and 3), the unfair competition claim (Claim 2), and the quasi contract claims (Claims 6 and 7). Defs.' Mem. of Law in Supp. Mot. to Dismiss ("MTD") at 1.

The Complaint contains the following substantive allegations. CCR International is a successor corporation to Coco Rico Inc., which manufactures a base for coconut soda in Puerto Rico (the "Coco Rico Product"). Compl. at 1-2. In March 2008, CCR International sold the Coco Rico Inc. assets to CCR Development Group ("CCRDG"). Id. at 2. CCRDG breached the agreement, but continued to sell the Coco Rico Product. Id. CCR International subsequently agreed to assign the CCRDG debt to Elias under an Assignment Agreement ("AA"). Id. at 2-3. Under the AA, Elias was to pay CCR International $37,500 per month until Elias could afford a lump $4,700,000 payment. In exchange, Elias was to purchase the Coco Rico Product assets at a discount pursuant to an Asset Purchase Agreement (the "APA"). Id. at 3. Elias did not make the payments defined in the AA, but liquidated the CCRDG obligations, making $6,041,000 in payments

---

[2] Defendant first filed its motion by ECF with error on October 7, 2015. ECF No. 15. The document was rejected as deficient by the Clerk on October 13, 2015. It was sufficiently refiled the same day. ECF No. 18.

3

for the benefit of CCRDG, not CCR International. Id. CCR
International nonetheless transferred all of its intellectual
property to Coco Rico LLC, an entity created by Elias
principals. Id. CCR International alleges the transfer was made
on certain payment assurances pursuant to the AA. Id. at 4.
Elias announced on June 9, 2015 "that it would pay none of its
obligation to CCR International." Id. Meanwhile, Defendants
continue to use the Coco Rico Product trademarks. Id. Plaintiff
seeks monetary damages in the amount of $8,259,000 and a
preliminary injunction enjoining Defendants from using the Coco
Rico Product trademarks and formula. Id.


Oral argument was held and the motion to dismiss deemed
fully submitted on December 2, 2015.


**II.  The Applicable Standard**


On a motion to dismiss pursuant to Rule 12(b)(6), all
factual allegations in the complaint are accepted as true, and
all inferences are drawn in favor of the pleader. Mills v.
Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).
However, "a plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and
conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

4

(2007) (quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" Munoz-Nagel v. Guess, Inc., No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)) and Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); see also Williams v. Calderoni, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012). The pleadings, however, "must contain something more

5

than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

**III. The Motion to Dismiss is Granted**

**A. Trademark and Unfair Competition Claims**

"In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114, or unregistered trademarks, pursuant to 15 U.S.C. § 1125(a)(1), a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale ... or advertising of goods or services, 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent." 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotation marks omitted) (citing Time, Inc. v. Petersen Publ'g Co., 173 F.3d 113, 117 (2d Cir.1999); Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir.1997). Additionally, a plaintiff alleging a Lanham Act claim "must show that defendants' use of that mark is likely to cause confusion as to the affiliation, connection, or association of

6

Defendant with Plaintiff, or as to the origin, sponsorship, or
approval of the defendants' goods, services, or commercial
activities by plaintiff." Id. (internal quotation marks and
brackets omitted) (citing 15 U.S.C. § 1125(a)(1)(A); Estee
Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508-09 (2d
Cir.1997); Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d
1072, 1075 (2d Cir.1993). The requirements for common law
trademark infringement "mirror" federal law. C=Holdings B.V. v.
Asiarim Corp., 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013); see
also Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 430 (S.D.N.Y.
2012) (citing Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,
378 F.Supp.2d 448, 456 (S.D.N.Y.2005)).

Defendants do not argue they have not used the Coco Rico
trademarks, and submit only that Plaintiff has not met the
pleading requirements for its Lanham Act and common law
trademark claims because CCR International did not own the Coco
Rico trademark at issue. MTD at 7-9. In short, Defendants submit
that the trademarks were transferred to CCRDG, and pursuant to
the APA, the trademarks transferred from CCRDG to Elias. Id. at
8. Therefore, Plaintiff has no claim to the trademarks upon
which its Lanham Act and common law trademark and tradename
allegations are based.

Plaintiff has not pled an entirely consistent story with regard to whether CCR International or CCRDG owned the trademarks at issue. Plaintiff has pled the following facts. First, CCR International was the owner of Coco Rico. Compl. at 6-7, ¶ 8. On March 31, 2008, CCR International entered into an agreement to sell "the formula to its soft drink, its trademarks, and its manufacturing facilities to [CCRDG]." Id. at 7-8, ¶ 14. CCRDG subsequently breached the sale agreement. Id. at 8, ¶¶ 16, 18. Because of CCRDG's breach, CCR International pursued other purchasers for the Coco Rico Assets, and entered in to a series of agreements with Elias related to the Coco Rico Assets. Id. at 8-9, ¶¶ 18, 21-27. Plaintiff has also pled that under the AA, "CCR International agreed to assign its rights under the 2008 [CCRDG] Agreement to the Elias Group, LLC . . . in exchange for an initial payment of Thee Hundred Thousand dollars ($300,000 USD) and the Elias Group's conditional agreement to purchase the Coco Rico assets after conducting due diligence to determine whether to execute an Asset Purchase Agreement for those assets." Id. at 8-9, ¶ 21. Finally, Plaintiff alleges that after due diligence was completed, Elias "agreed to purchase the Coco Rico trademark and formula from CCR International," id. ¶ 23, and payments "were contingent upon the Elias Group acquiring the rights, title, and interests in all of the Coco Rico assets." Id. at ¶ 25.

8

Plaintiff's claims rely entirely on the aforementioned series of agreements between Plaintiff, CCRDG, and Defendants. These agreements, attached in different combinations to both parties' pleadings, are therefore incorporated into the Complaint by reference and are relevant to disposition of the motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (citations omitted)); see also Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) ("We will consider only the complaint and any documents attached thereto or incorporated by reference and "documents upon which the complaint 'relies heavily.'" (citations omitted)).

The agreement between Plaintiff and CCRDG has not been submitted to the Court. However, all four other agreements reference and explicitly affirm that CCRDG was the sole owner of the Coco Rico trademarks and all intellectual property at issue, and transferred those rights to Elias. See MTD Ex. 1 ("Aug. 23, 2013 Ratification"), Ex. 2-3 ("Jan. 30, 2013 Assignment"), Ex.

4-5 ("April 15, 2015 Asset Purchase Agreement"), Ex. 6 ("June 9,

2015 Buyout Letter"). For example, the January 30, 2013

Assignment Agreement between Plaintiff and Elias states:

> WHEREAS, [CCR International] entered into that certain
> Asset Purchase Agreement, dated as of March 31, 2008 . . .
> with CCR Development Group, Inc. ("CCRDG"), pursuant to
> which, *inter alia*, (a) [CCR International] sold,
> transferred, and assigned to CCRDG all right, title and
> interest in and to the Coco Rico trademark throughout the
> world and all related intellectual property rights of
> whatever kind and nature, and the formula(s) to make all
> Coco Rico products, together with all intellectual property
> rights associated therewith throughout the world (together,
> the "Coco Rico Assets") and (b) in consideration for such
> sale, assignment and transfer, CCRDG agreed, *inter alia*, to
> make certain payments and offer other valuable
> consideration to [CCR International]...

MTD, Ex. 2 at 2.

The very fact of the Assignment Agreement assumes the

validity of the transaction between CCR International and CCRDG

for the marks; if CCRDG's default somehow nullified the transfer

of the marks, thus leaving them in CCR International's hands to

prosecute, CCR International's benefits under the agreement must

have correspondingly vanished. Instead, the Assignment Agreement

transfers Plaintiff's benefits under the CCRDG agreement to

Elias.

Likewise, the Aug. 23, 2013 Ratification, which effectively

transfers all obligations of the original CCR International

entity to a new CCR International entity, mirrors the January

10

30, 2013 Agreement, acknowledging that CCR International

transferred all interest in the Coco Rico assets to CCRDG:

> WHEREAS, Original CCR [International] entered into that
> certain Asset Purchase Agreement, dated as of March 31,
> 2008 (the "Asset Purchase Agreement") with CCR Development
> Group, Inc. ("CCRDG"), pursuant to which, *inter alia*, (a)
> Original CCR sold, transferred and assigned to CCRDG all
> right, title and interest in and to the Coco Rico trademark
> throughout the world, and all related intellectual property
> rights of whatever kind and nature, and the formula(s) to
> make all Coco Rico products, together with all intellectual
> property rights associated therewith throughout the world
> (together, the "Coco Rico Assets"), and (b) in
> consideration for such sale, assignment and transfer, CCRDG
> agreed, *inter alia*, to make certain payments and offer
> other valuable consideration to Original CCR
> [International];. . .

MTD, Ex. 1 at 1.

Plaintiff's opposition is based solely on an argument that
"the transfers have no legal effect because the payment by the
Elias Group to CCR International was essential for the transfers
to be valid." Plaintiff frames this as a consideration argument,
but the agreements above make clear that the transfer of the
marks from CCRDG to Elias were for some consideration from
CCRDG. That "the parties [before the Court] did not reach a
meeting of the minds required for CCR International to consent
to the transfer of the trademarks" is irrelevant if CCRDG owned
the marks, as the agreements state. See Pl.'s Opp. at 4.
Plaintiff's argument is more coherent as a breach claim.
Plaintiff submits that under the AA, "in order for defendants to

11

have complied with their agreement, they would have had to paid
[sic] 'Yearly Payment' and 'Buyout Amount' *to CCR
International."* Id. (emphasis in original). In other words,
Defendants breached the January 30, 2013 agreement with CCR
International. These claims do not somehow transfer CCRDG's
ownership of the marks back to Plaintiff to allow CCR
International to prosecute their allegedly improper use.

Because the agreements incorporated by reference are
unequivocal that CCRDG owned the trademarks at issue, Plaintiff
has failed to plead ownership of the marks. Accordingly, the
motion to dismiss with prejudice Plaintiff's claims of trademark
infringement in violation of 15 U.S.C. § 1114, unfair
competition in violation of 15 U.S.C. § 1125(a), and common law
trademark and tradename infringement is granted.

**B.   Quasi-Contract Claims**

Defendants point out that they do not challenge the
validity of the Assignment Agreement between CCR International
and Elias. MTD at 10. Therefore, Defendants argue the quasi-
contract claims are duplicative because they are based on the
same factual allegations as Plaintiff's contract claims. Id.

12

Plaintiff submits its quasi contract claims in the alternative
to its breach of contract claims. Pl.'s Opp. at 6.

Generally, Federal Rule of Civil Procedure 8(a)(3) permits
pleading in the alternative. However, quasi contract principles[3]
are generally "beside the point when parties demand what they
bargained for in a valid agreement." See US Airways, Inc. v.
McCutchen, 133 S. Ct. 1536-37, 1547, 185 L. Ed. 2d 654 (2013)
(internal quotation marks and citations omitted). The
substantive matter of contract law, not only the federal
pleading standard, is therefore at issue. Under New York law, "a
claim for unjust enrichment is normally proper only in the
absence of an express agreement between the parties. Moreover, a
claim for unjust enrichment is not available where it simply
duplicates, or replaces, a conventional contract claim."
Digizip.com, Inc. v. Verizon Servs. Corp., No. 14 CIV. 1741 GWG,
2015 WL 6076532, at *9 (S.D.N.Y. Oct. 16, 2015) (citations and
internal quotation marks and ellipses omitted). Likewise,
"[u]nder New York law, the existence of a valid and enforceable
written contract ordinarily precludes recovery in quantum meruit

---

[3] Quantum meruit and unjust enrichment are doctrines of quasi
contract. Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir.
1994) (addressing quantum meruit); Deutsche Asset Mgmt., Inc. v.
Callaghan, No. 01 CIV.4426 CBM, 2004 WL 758303, at *11 (S.D.N.Y.
Apr. 7, 2004) (addressing unjust enrichment).

13

for events arising out of the same subject matter." Paper Corp. of U.S. v. Schoeller Tech. Papers, Inc., 773 F. Supp. 632, 640 (S.D.N.Y. 1991). In short, where a contract exists, it will control, but in the event a party disputes the validity of the contract, a plaintiff may seek (though not recover) remedies sounding in both breach and quasi contract. See Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 263 (2d Cir. 1999).

Plaintiff has pled a fear, but not a claim, that the Assignment Agreement is invalid. Plaintiff's breach of contract claims are premised on the validity of the Assignment Agreement. Defendants do not dispute the validity of the Assignment Agreement. MTD at 10. Therefore, the quasi contract claims are duplicative of the breach claims, and must be dismissed. See e.g. Digizip.com, Inc, 2015 WL 6076532, at *10 (dismissing unjust enrichment claims duplicative of breach of contract claims "because the parties do not dispute the validity of those contracts."). Plaintiff cites only inapposite (and largely out of district) RICO cases to support its contention that it may plead both quasi contract and breach claims. Pl.'s Opp. at 7. The duplicity of quasi contract claims and breach of contract claims is distinguishable from RICO cases. See e.g. Digizip.com, Inc., 2015 WL 6076532, at *10. The trouble is not that the breach claims are a theory of recovery contrary to the quasi

14

contract claims, but that the breach claims necessitate contrary pled facts to the quasi contract claims. A party alleging a breach of contract claim under New York law must first and foremost show an enforceable contract exists. Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Conversely, "[a] quasi-contract is one implied by law, where none in fact exists." Deutsche Asset Mgmt., Inc. v. Callaghan, No. 01 CIV.4426 CBM, 2004 WL 758303, at \*11 (S.D.N.Y. Apr. 7, 2004). Given Defendant has conceded validity of the Assignment Agreement, either Plaintiff pleads the Agreement is invalid and proceeds on quasi contract claims, or Plaintiff pleads the Agreement is valid and proceeds on breach claims.

Given Plaintiff has pled the validity of the Assignment Agreement and Defendant has conceded the same, Plaintiff's quantum meruit and unjust enrichment claims are dismissed without prejudice.[4]

---

[4] In the event the Assignment Agreement is found to be invalid and the quasi contract claims become the relevant mode of recovery, Plaintiff may seek leave to amend at that time.

15

## IV. Conclusion

For the foregoing reasons and as set forth above,
Defendant's motion to dismiss is granted.

It is so ordered.

New York, NY
January $/\gamma$, 2016

ROBERT W. SWEET
U.S.D.J.

16