UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCR INTERNATIONAL, INC., et al.,<br><br>                    Plaintiffs,<br>-v-<br>ELIAS GROUP, LLC, et al.,<br><br>                    Defendants. | 15 Civ. 6563 (PAE) |
| ELIAS GROUP, LLC, et al.,<br><br>                    Plaintiffs,<br>-v-<br>CCR DEVELOPMENT GROUP, INC., et al.,<br><br>                    Defendants. | 16 Civ. 6280 (PAE) |
| BANCO COOPERATIVO DE PR,<br><br>                    Plaintiff,<br>-v-<br>ELIAS GROUP, LLC, et al.,<br><br>                  Defendants. | 17 Civ. 6697 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a discovery dispute regarding the invocation of privilege by the Elias Group, LLC ("Elias Group") in response to requests for production made by CCR Development Group, Inc., CCR International, Inc., and Jose Fuertes (collectively, for purposes of this order, the "CCR Parties"). On November 22, 2019, the CCR Parties filed a letter motion to compel production of more than 100 documents marked as privileged by Elias Group. Dkt.

216.[1] On November 25, 2019, Elias Group responded, defending its claims of privilege and offering to provide the documents for *in camera* review. Dkt. 217. Also on November 25, 2019, the Court directed the parties to provide 16 exemplar documents and Elias Group's privilege log for *in camera* review by November 27, 2019. Dkt 218.

On December 2, 2019, the Court requested a letter setting forth the relationship of the author and all recipients, as well as the context, of each exemplar document. Dkt. 219. On December 5, 2019, Elias Group submitted such a letter. Dkt. 220.

The Court has reviewed the 16 exemplar documents provided by Elias Group as a representative sample of the documents it withheld as privileged, along with the Elias Group's privilege log and its December 5, 2019 letter. All 16 involve communications between some combination of Elias Group's principal, attorneys for Elias Group, and an accountant for Elias Group during the negotiation and due diligence period leading up to the signing of the agreements at the heart of this case, or during the immediate aftermath. Some threads include communications between Elias Group and the CCR Party principals and representatives. Eight of the documents include Elias Group's accountant, Craig Savell; for these documents the principal issue is whether the inclusion of the accountant on those emails defeats Elias Group's claim of privilege. The other eight involve internal communications between Elias Group's lawyers or communications solely between Elias Group's principal, Richard Hahn, and the company's retained lawyers; for these documents, although Elias Group incorrectly labelled some as work-product privileged, the Court treats this labelling as a good-faith error and instead

---

[1] The letter motion to compel also referred to answers to production requests that Elias Group is yet to make. The Court was unable to discern what relief the CCR Parties sought here, and the Elias Group did not address this issue in its response. The Court directs the parties to meet and confer again to resolve this issue.

2

evaluates the more pertinent issue of whether they were properly withheld as attorney-client privileged.

For the reasons set forth below, the Court grants in part and denies in part the CCR Parties' motion to compel.

**I.     Applicable Legal Standards**

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. *United States v. Const. Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The privilege's "purpose is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote broader public interests in the observance of law and administration of justice." *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) (internal quotation marks and citations omitted). Courts construe the privilege narrowly because it renders relevant information undiscoverable, applying it "only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see In re Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. *In re Cty. of Erie*, 473 F.3d at 418.

A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. *Id.* at 419 (citing *Const. Prod. Research, Inc.*, 73 F.3d at 473). With regard to the third requirement, "the question usually is whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice . . . [*i.e.*,] whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* at 419–20. Such purpose "should be assessed dynamically and in light of the advice being sought or rendered," and "redaction is available for documents which

3

contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication." *Id.* at 420 & 421 n.8.

Although the attorney-client privilege does not attach to communications that are intended to be or are disclosed to third parties, it "may cover communications made to agents of an attorney . . . hired to assist in the rendition of legal services." *In re Grand Jury Subpoenas dated Mar. 9, 2001*, 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) (internal quotation marks and citations omitted); *see generally United States v. Kovel*, 296 F.2d 918, 921–22 (2d Cir. 1961). "Confidential communications between a third-party representative of the client, such as an accountant or other non-testifying expert, and the client's attorney, or between two different attorneys for a client, may be protected from disclosure if the communications are made on behalf of the client for the purpose of obtaining legal advice." *In re Grand Jury Subpoenas*, 179 F. Supp. 2d at 283; *see also, e.g., Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 87 (S.D.N.Y. 2019) ("[W]aiver is not found where the presence of a third party is needed to allow the client to communicate information to an attorney, such as where a translator is used or where an accountant supplies specialized knowledge to allow an attorney to understand the client's situation."); *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) ("Information provided to an accountant by a client at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation.").

## II.   The Accountant Documents

### A.   Documents A2, A4, and A7

The sections Elias Group redacted from Documents A2, A4, and A7 are privileged. The redacted section of A2 (ELIAS 0060409) involves emails, solely between Hahn and Elias Group's attorneys, in which legal advice is solicited and provided, as well as a final email from

4

Elias Group's attorney to its accountant, Savell, asking a question about the legal documents discussed in the thread. The redacted section of A4 (ELIAS 0009164) is an email from an attorney for Elias Group to Savell asking for his help to "make sense of" certain financial documents so that the attorney could provide legal advice. The redacted section of A7 (ELIAS 00010179–80) is pure legal advice provided in an email, from attorneys for Elias Group to Hahn, on which Savell was copied.

The redacted text in each of these documents falls squarely within the realm of attorney-client privilege. The inclusion of Elias Group's accountant on these documents is clearly for assistance in the provision of legal advice—explicitly in the case of Documents A2 and A4, and implicitly in the case of A7. Elias Group therefore correctly withheld the redacted portions of these documents.

### B.    Documents A1, A3, and A6

Documents A1 (ELIAS 005945), A3 (ELIAS 006151), and A6 (ELIAS 009422) present closer questions. The redacted portions of Documents A1 and A3 consist of the brief text—*i.e.*, "FYI" or an equivalently brief communication—of an email from Elias Group's attorneys to its accountant, forwarding an email and attachments sent by the CCR Parties. Similarly, the redacted portion Document A6 consists of an "FYI" sent by Hahn to Elias Group's attorneys and Savell, forwarding an email thread with the CCR Parties about the near-completion of the Coco Rico deal.

Elias Group has not met its burden of demonstrating that any privilege applies to the "FYIs" and similar language that it seeks to withhold as privileged. The context of these emails makes it at least as likely that Savell's inclusion was for business purposes as that his inclusion was to aid in the rendering of legal advice. For example, the unredacted portion of Document A3 reveals that the CCR Parties specifically requested that the attachments to that email be sent

5

to Elias Group's accountants. Notwithstanding Elias Group's post-hoc rationalization that "this document contains [counsel's] request that Mr. Savell analyze financial reports of CCRDG for the benefit of Elias Group's lawyers so they could properly represent Elias Group," Dkt. 220 at 2, the CCR Parties' intention to have the documents sent to Savell suggests that he was meant to review these documents for business, at least as much as legal, purposes.

The Court therefore finds that Elias Group improperly withheld the brief forwarding language of these emails sent to Savell. The redacted language and surrounding context do not enable Elias Group to meet its burden of showing that the predominant purpose of the communication was to solicit or render legal advice.

This ruling, however, has only limited implications for other withheld communications. First, it only applies to invocations of privilege where the redacted material is so sparse of content as to not enable Elias Group to carry its burden of establishing a privileged communication. This ruling controls only similar communications, *i.e.*, those redacting brief anodyne language of the sort redacted in Documents A1, A3, and A6. Second, this ruling, which applies to emails of this nature sent to Elias Group's accountant, does not apply to emails of a similar nature solely to or between Elias Group's attorneys. In that latter context, a similarly brief email from an attorney to co-counsel would likely be held to be for the purpose of rendering legal advice, thus substantiating a claim of privilege.

### C.     Documents A5 and A8

Elias Group redacted non-privileged communications, as well as privileged communications, from Documents A5 (ELIAS 0009280–81) and A8 (ELIAS 0010364). A5 is an email directly from Hahn to Savell, copying attorneys. Hahn emails Savell to let him know his "thinking" with regard to a potential "counter offer" to the CCR Parties. The question presented to Savell is clearly one of how much to pay and when, not one seeking legal advice.

6

Of the redacted portion, only a single sentence—directed to "David," in all capital letters, stretching from the end of the first page of the document onto the top of the second—seeks legal advice and thus was properly redacted. Elias Group must produce the rest of A5 unredacted.

A8 also contains an improper redaction. Specifically, it redacts an email from Jose Fuertes to Richard Hahn on May 1, 2015 at 7:24 a.m. Clearly, Elias Group has no privilege to invoke with regard to an email sent by CCR's principal in the course of negotiations. The rest of Elias Group's redactions to Document A8 squarely involved legal advice from Elias Group's attorneys and thus were proper.

### III.   The Attorney-Only Documents

The eight exemplars in this category all were clearly attorney-client privileged. These documents ranged from explicit requests for, and provisions of, legal advice, *see, e.g.*, Documents B5 and B6, to emails sent entirely between members of Elias Group's legal team to keep each other informed of legal developments in the negotiation process, *see, e.g.*, Documents B2 and B4. Having reviewed these documents, the Court concludes that Elias Group met its burden for invoking attorney-client privilege, and its redactions categorically were proper.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the CCR Parties' motion to compel. The Court orders Elias Group to re-review the documents for which its invocation of privilege was challenged by the CCR Parties, and to make an enhanced production of these documents based on the Court's rulings on the 16 exemplar documents by **December**

**23, 2019.**[2]  The Clerk of Court is respectfully directed to terminate the motion pending at Docket 216.

SO ORDERED.

                                               *Paul A. Engelmayer*
                                               PAUL A. ENGELMAYER
                                               United States District Judge

Dated: December 6, 2019
       New York, New York

---

[2] The Court does not expect to be called upon to make further rulings on this discovery dispute. The Court instead expects counsel, guided by these rulings, to reassess the outstanding discovery disputes and to resolve them collegially.