UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CCR INTERNATIONAL, INC., CCR
DEVELOPMENT GROUP, INC., JOSÉ
FUERTES, and BANCO COOPERATIVO
DE PUERTO RICO,

                Plaintiffs and Counterclaim
                Defendants,

            -v-

ELIAS GROUP, LLC,

                Defendant and Counterclaim
                Plaintiff.

15 Civ. 6563 (PAE)
16 Civ. 6280 (PAE)
17 Civ. 6697 (PAE)

OPINION &
ORDER

---

PAUL A. ENGELMAYER, District Judge:

On December 22, 2020, the Court issued an opinion and order dismissing most of the

claims brought by CCR International, Inc. ("CCR"), CCR Development Group, Inc. ("CCRDG"),

and José Fuertes ("Fuertes," and, together with CCR and CCRDG, the "CCR Parties") against

Elias Group, LLC ("Elias").  *See CCR Int'l, Inc. v. Elias Grp., LLC*, No. 15 Civ. 6563 (PAE),

2020 WL 7629325 (S.D.N.Y. Dec. 22, 2020) ("*CCR I*").  The CCR Parties alleged that Elias,

through several transactions in which it bought a soda company from the CCR Parties, had

agreed, but failed, to pay an additional $8.5 million to CCR, and to pay Fuertes annual amounts

associated with an independent-contractor agreement.  The Court held that Elias, in fact, had not

agreed to pay CCR the $8.5 million that CCR claimed it was owed, and granted Elias's motion

for summary judgment on the CCR Parties' breach-of-contract claims.  The Court also held that

Fuertes had not shown that he was entitled to any further compensation, and so granted Elias's

motion for summary judgment as to his breach-of-contract claims as well.  That decision thus

dismissed all of the CCR Parties' breach-of-contract claims.

Elias, however, did not move for summary judgment on the CCR Parties' last remaining claim, for breach of the implied covenant of good faith and fair dealing (the "implied covenant"). Nor had either party moved for summary judgment as to any of Elias's counterclaims. The Court thus directed the parties to confer as to the rational next steps to address each side's surviving claims. In response, Elias stated that it had intended to move for summary judgment on the CCR Parties' claim for breach of the implied covenant, but had inadvertently neglected to do so, and so sought leave to file expedited, supplemental briefing on that sole remaining claim. Elias also represented that, should all of the CCR Parties' claims be dismissed, it intended to voluntarily dismiss its counterclaims.

Before the Court is Elias's supplemental brief seeking summary judgment against the CCR Parties' claim for breach of the implied covenant of good faith and fair dealing. For the following reasons, the Court grants that application.

## I.    Background

The Court assumes familiarity with the complex history of this case and incorporates by reference the fuller factual recitations provided in the Court's summary judgment decision and prior orders. *See CCR I*, 2020 WL 7629325, at *1–8; Dkt. 182. The Court sets forth here only the facts relevant to the pending motion.

Before March 31, 2008, CCR owned a soda company, Coco Rico, along with assets and trademarks associated with it (the "Coco Rico assets"). *See* Dkt. 242-1 ("JSF") ¶ 11. On that date, it sold the Coco Rico assets to CCRDG for $12.8 million under an asset purchase agreement. *See id.*; Dkt. 242-11 ("2008 APA"). CCRDG largely paid that purchase price by issuing CCR a $9 million note. *See* Dkt. 242-3 ("Fuertes Tr.") at 39. CCRDG ultimately paid only between $3 and $4 million under the 2008 APA; it defaulted on the remaining amounts. *See* JSF ¶ 19; Fuertes Tr. at 205.

2

After CCRDG defaulted, CCR "explored many alternatives," but ultimately "went for help" to Richard Hahn, the sole member of Elias, who had a longstanding relationship with the CCR Parties.  Fuertes Tr. at 51, 86, 134–36.  In January 2013, CCR assigned to Elias all of CCR's rights to receive payment from CCRDG under the 2008 APA, which CCR represented were "at least $9,000,000."  *See* JSF ¶¶ 23–24; Dkt. 242-15 ("Assignment Agreement") § 1.01. Under the Assignment Agreement, Elias agreed to pay CCR (1) a $300,000 "initial payment"; (2) monthly amounts it received from CCRDG, if any; and (3) if Elias later acquired the Coco Rico assets from CCRDG, either $450,000 per year until Elias paid a "Buyout Amount," or the Buyout Amount.  *See* Assignment Agreement § 1.03.  The Assignment Agreement defined Buyout Amount to mean, as relevant here, $5 million reduced by the following:

> If the aggregate consideration given by [Elias] for its acquisition of the Coco Rico Assets includes the payment of any amount or other valuable consideration in addition to the release of CCRDG's payment obligations under the [2008 APA], then by the amount of such additional payment or the value of such additional consideration (such value, as reasonably determined by [Elias]).

*Id.* § 1.03(c)(iii)(2).  In other words, if Elias bought the Coco Rico assets from CCRDG, it had to pay CCR $5 million less any amounts it paid to CCRDG above and beyond "the release of CCRDG's payment obligations under the" 2008 APA.

In June 2013, Elias and CCRDG entered into an option agreement granting Elias certain rights to purchase the Coco Rico assets from CCRDG.  *See* JSF ¶ 33; Dkt. 242-16 ("Option Agreement").  Under that agreement, Elias obtained the right to acquire those assets from CCRDG by paying $5.75 million and effecting "the irrevocable and complete release and extinguishment of the purchase price obligations of [CCRDG] under the [2008 APA] . . . , which APA was subsequently assigned by [CCR] to [Elias]," which the parties stipulated to be $8.5 million at that time.  *See* Option Agreement § 1(a)(i)(A), (B).

In April 2015, CCRDG agreed to sell the Coco Rico assets to Elias.  JSF ¶ 39; Dkt. 242-18 ("2015 APA").  In exchange, Elias agreed to (1) pay $4.75 million in cash; (2) issue a $1 million note to CCRDG, which CCRDG in turn agreed to assign to its lender; and (3) "concurrently with Closing, release and extinguish all of the purchase price obligations of [CCRDG] to [Elias] pursuant to the [2008 APA] . . . , which was subsequently assigned by [CCR] to [Elias]."  2015 APA § 2.04.  CCRDG's principal confirmed that Elias both paid the $4.75 million and released CCRDG's $8.5 million obligation to Elias under the assigned 2008 APA.  *See* Dkt. 242-6 ("Rivera Tr.") at 36–37, 67–68.  The 2015 APA also required CCRDG to deliver to Elias the Coco Rico soda formula, including all copies of it, by the closing.  2015 APA § 3.02(a)(vii).

In June 2015, Elias wrote to CCR and Fuertes.  Dkt. 242-19.  Elias stated that it had acquired the Coco Rico assets as defined by the Assignment Agreement, that it had elected to pay the Buyout Amount, and that, under its interpretation of the Assignment Agreement, the calculation of the Buyout Amount yielded that Elias did not owe CCR anything further.  *See id.* at 2–3.  In support, Elias stated that, under the 2015 APA, it had released CCRDG's payment obligations to it, and also paid over $5 million to CCRDG.  *Id.*  As a result, deducting the latter amount from the $5 million Buyout Amount, Elias concluded that it had "no further obligations under the Assignment Agreement[.]"  *Id.* at 3.

In August 2015, CCR filed a complaint against Elias in this Court.  Dkt. 4.  In July 2016, Elias filed a complaint against CCRDG in New York State Supreme Court, which CCRDG removed to this Court and which was then consolidated with CCR's original action.  Dkt. 81.  In September 2017, CCRDG's lender sued Elias, alleging that Elias had failed to make payments on the note associated with the 2015 APA.  *See* Dkts. 103, 106.  The Court also consolidated that latter suit with the prior two, but has since settled.  *See* Dkt. 232.

In September 2019, after a long discovery period and substantial confusion over the operative pleadings in the consolidated cases, the CCR Parties filed a consolidated amended complaint.  *See* Dkt. 201 ("CAC").  As relevant here, the CAC asserted claims against Elias for breach of the Assignment Agreement, Option Agreement, and 2015 APA and breach of the implied covenant of good faith and fair dealing, seeking $8.5 million in damages or rescission of the parties' agreements.  *Id.* ¶¶ 104, 106–15.  In November 2019, Elias answered the CAC and brought counterclaims against the CCR Parties.  Dkt. 215 ("Answer").

Between March and May 2020, the parties briefed cross-motions for summary judgment on most of the CCR Parties' claims against Elias, but as mentioned, did not address the CCR Parties' claim for the breach of the implied covenant.  *See* Dkts. 242–50.  The CCR Parties argued that Elias, through the Assignment Agreement, Option Agreement, and 2015 APA, agreed to pay CCR the $8.5 million debt that CCR had, in 2013, assigned to Elias, but failed to pay.  Elias argued that it had never agreed to pay CCR that amount and had instead, in 2013, bought from CCR the right to *collect* that $8.5 million from CCRDG, and later, in 2015, released CCRDG from that obligation, as part of the consideration it paid for the Coco Rico assets.

On December 22, 2020, the Court resolved those motions, holding with Elias.  The Court held that, after the 2008 APA, CCRDG's payment obligations were to Elias, not to CCR, and that Elias's only obligations to CCR arose under the Assignment Agreement.  Because Elias's obligation to CCR under that agreement was $5 million less any amounts it paid to CCRDG for the Coco Rico assets beyond the release of CCRDG's debt to Elias, and because Elias had both agreed to release CCRDG's debts and to pay CCRDG more than $5 million, the Court held that Elias did not owe any more payments to the CCR Parties.

The Court then directed the parties to submit a joint letter with their views as to next steps in this case.  Dkt. 252.  On January 18, 2021, the parties did so.  Dkt. 255.  In that letter, Elias represented that its failure to move for summary judgment on the CCR Parties' claim for breach of the implied covenant was inadvertent, and it sought leave to file a supplemental summary judgment motion as to that claim.  *Id.* at 1–2.  The CCR Parties did not oppose that request.  *Id.* at 2.  Accordingly, on January 19, 2021, the Court set a briefing schedule for Elias's supplemental motion.  Dkt. 256.  On February 1, 2021, Elias filed that motion.  Dkt. 257 ("Elias Mem.").  On February 16, 2021, the CCR Parties opposed it.  Dkt. 258 ("CCR Opp'n").  On February 22, 2021, Elias replied.  Dkt. 259 ("Elias Reply").

## II.    Legal Standard Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears the burden of showing the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III.  Discussion

### A.  Applicable Legal Standards

Under New York law, a duty of good faith and fair dealing is implied in every contract, to the effect that neither party "shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (quoting *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (per curiam)).  The implied covenant does not include any term inconsistent with the terms of the contractual relationship, or "create duties which are not fairly inferable from the express terms of that contract."  *Interallianz Bank AG v. Nycal Corp.*, No. 93 Civ. 5024 (RPP), 1994 WL 177745, at *8 (S.D.N.Y. May 6, 1994).  Nor can it "be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights."  *Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC*, 431 F. Supp. 3d 176, 252 (S.D.N.Y. 2019) (quoting *Peter R. Friedman, Ltd. v. Tishman Speyer Hudson Ltd. P'ship*, 107 A.D.3d 569, 570 (1st Dep't 2013)).  But it includes promises that a "reasonable person in the position of the promisee would be justified in understanding were included" in the contract and, when the contract involves the exercise of discretion, a promise "not to act arbitrarily or irrationally in exercising that discretion."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (citation omitted).  The elements of a claim of breach of the implied covenant are similar to those for a breach of a duty

of care, in that it requires the existence of a duty, breach of that duty, causation, and damages. *See Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009). "[S]ince there is a presumption that all parties act in good faith, the burden of proving a breach of the covenant of good faith and fair dealing is on the person asserting the absence of good faith." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (quoting 23 Williston on Contracts § 63:22 (4th ed. 2006)).

However, where the breach of that implied duty arises from a breach of the underlying contract, it does not create a freestanding cause of action. *See e.g.*, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013); *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). "New York law does not treat a breach of the covenant of good faith and fair dealing claim as one that is *separate* from a breach of contract claim where the claims are based on the same facts." *Giller v. Oracle USA, Inc.*, 512 F. App'x 71, 73 (2d Cir. 2013) (summary order). And where a claim for breach of the implied covenant is duplicative of a breach-of-contract claim, the former is to be dismissed. *See Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015). Such "claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" *Id.* (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 426 (1st Dep't 2010)); *see Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (dismissing breach of implied covenant of good faith and fair dealing where a breach of contract claim "based upon the same facts" was also pled); *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." (citation omitted)).

B.    **Discussion**

Elias argues that dismissal of the CCR Parties' claim for breach of the implied covenant is required because that claim is duplicative of the CCR Parties' breach-of-contract claims, and in fact rests on a contract theory the Court has already rejected.  *See* Elias Mem. at 2–3; Elias Reply at 2–3.  The CCR Parties respond that their claim for breach of the implied covenant rests on facts separate from those on which their breach-of-contract claims were based.  *See* CCR Opp'n at 1–2.  The Court holds, with Elias, that the CCR Parties' claim for breach of the implied covenant is duplicative of their claim for a breach of contract, which the Court has rejected.  As a result, the Court grants Elias's motion for summary judgment as to that claim.

In the CAC, the CCR Parties do not specify which allegations pertain to its claim for breach of the implied covenant.  Instead, the CAC states that, as to that count, the CCR Parties "adopt and incorporate by reference the preceding allegations *in extenso* as though fully set forth herein."  CAC ¶¶ 112–13.  In their response to Elias's present motion, the CCR Parties clarify that the following allegations support that claim:

> Elias used the extensive due diligence period to aggravate the direness of CCRDG's economic situation.  Elias then obligated CCRDG to turn over the formulae for Coco Rico before closing so that Elias possessed one of CCRDG's key assets before paying any significant consideration.  Those facts forced Plaintiffs to allow the closing [following the 2015 APA] to go forward without the $8.5 million for the extinguishment of the debt being paid.

CCR Opp'n at 1 (citing CAC ¶¶ 34, 38–56, 62–64).  As a result, "Elias managed to get out of paying the $8.5 million CCRDG owed CCR International at the closing [of the 2015 APA] because CCRDG could not afford further delay."  *Id.* at 2 (citing CAC ¶ 39).  When Elias did so, the CCR Parties argue, it defeated the CCR Parties' "belie[f] that Elias would keep its promise to release and extinguish the debt that CCRDG owed to CCR International," despite it being "reasonable for Plaintiffs to understand that Elias would extinguish a debt that it stated three

times that it would extinguish." *Id.* at 2; *see also id.* at 3 ("Plaintiffs reasonably expected to be paid.  Elias breached the covenant of good faith and fair dealing by not paying them.").  The CCR Parties do not cite any evidence in support of these propositions.  They rely instead on the allegations in the CAC.

Even if the CCR Parties' mere allegations, rather than evidence, could, in theory, defeat Elias's motion at this late stage of the litigation, *see Wang v. Hearst Corp.*, 877 F.3d 69, 76 (2d Cir. 2017) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (quoting *Anderson*, 477 U.S. at 248)), those allegations are not up to that task here.  That is because they depend entirely on the CCR Parties' rejected breach-of-contract theory.  The CCR Parties' opposition contends that Elias used sharp-elbowed tactics "to get out of" paying CCR $8.5 million, despite Elias having "stated three times"—*i.e.*, in the Assignment Agreement, Option Agreement, and 2015 APA—that it would do so.  CCR Opp'n at 1–2.  But the Court has already held that Elias, in fact, did not so promise.  In 2013, it bought, from CCR, CCR's rights *to receive* payments from CCRDG, which CCRDG previously had owed to CCR.  *See CCR I*, 2020 WL 7629325, at *11–12.  When Elias later agreed to "release and extinguish" CCRDG's $8.5 million debt, it thus agreed only to release CCRDG's debt *to Elias*—which it did—not to both release that debt *and then* pay CCR the same amount in cash.  *See id.* at *12 ("[W]hen Elias bought the Coco Rico assets in April 2015, there was no debt to CCR for Elias to release or extinguish."); 2015 APA § 2.04(a) (Elias must "release and extinguish all of the purchase price obligations of Seller [*i.e.*, CCRDG] to Buyer [*i.e.*, Elias]," without reference to obligations to CCR.).

The CCR Parties' claim for breach of the implied covenant is thus duplicative of their previously dismissed breach-of-contract claim.  Like the latter claims, this claim rests on the proposition that Elias promised to pay CCR $8.5 million, but failed to do so.  "New York law, as discussed above, does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris*, 310 F.3d at 81.  Notably, too, the CCR Parties seek the same damages on their claim for breach of the implied covenant as they did for their rejected breach-of-contract claim: $8.5 million.  That also counsels finding the claims redundant.  *See, e.g.*, *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017) (dismissing implied-covenant claim as duplicative where plaintiff sought "identical damages" as under breach-of-contract claim); *Amcan Holdings*, 70 A.D.3d at 426 (same); *Deer Park Enters., LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (2d Dep't 2008) ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract." (cleaned up)).

The CCR Parties now frame Elias's alleged duty to pay CCR $8.5 million as based on their "belie[f]" and "understand[ing]" about Elias's obligations, rather than on any specific contract term.  CCR Opp'n at 2 (conceding that the "assignment agreement did not expressly forbid Elias to forgo paying the amount agreed to extinguish the debt").  But such expectations cannot create an $8.5 million obligation out of whole cloth.  "[T]he covenant of good faith and fair dealing . . . cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights." *Peter R. Friedman*, 107 A.D.3d at 570 (quoting *Fesseha v. TD Waterhouse Inv. Servs.*, 305 A.D.2d 268, 268 (1st Dep't 2003)); *see*

*INTL FCStone Mkts., LLC v. Corrib Oil Co.*, 172 A.D.3d 492, 493 (1st Dep't 2019) ("Nor can [defendant's] express obligations be varied by the assertion of a claim of breach of the covenant of good faith and fair dealing.").  Given the Court's prior holding, the CCR Parties' claim for breach of the implied covenant impermissibly seeks to impose another, multi-million duty on Elias, which contradicts the clear terms of the parties' many agreements.[1]  And to the extent the CCR Parties argue that their claim for breach of the implied covenant stems from Elias's exertion of pressure on CCRDG "to get out of" paying the $8.5 million, that claim merely "supplements [their] breach of contract claim with . . . allegations that defendants acted in bad faith and with intentional ill-will when breaching the [c]ontract."  *Charter Contracting Co. v. Orange & Rockland Utils.*, No. 20 Civ. 795 (VB), 2020 WL 7774337, at *6 (S.D.N.Y. Dec. 30, 2020).  Such allegations do not make their implied-covenant non-duplicative of their already-dismissed breach-of-contract claims.  *Id.*

## CONCLUSION

For the foregoing reasons, the Court grants Elias's motion for summary judgment seeking to dismiss the CCR Parties' sole remaining claim, for the breach of the implied covenant of good faith and fair dealing.

As a result, the only claims remaining in this case are Elias's counterclaims, which Elias has represented it intended to voluntarily dismiss if the Court dismissed the CCR Parties' remaining claim.  Dkt. 255 at 2.  The Court directs Elias to so move by April 12, 2021, and for the parties to submit a joint letter, by three days later, *i.e.*, April 15, 2021, with their views as whether, with all claims dismissed, this case may now be closed.

---

[1] That conclusion is reinforced by the CCR Parties' attempt, in their opposition on the pending motion, to relitigate a dispute from the first round of summary judgment briefing, about the interpretation of the term "extinguish."  *See* CCR Opp'n at 2–3.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: April 5, 2021
      New York, New York